IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PAMELA K. SCOTT, | § | |
| | § | |
| V. | § | A-08-CA-480-LY (AWA) |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration, filed on June 23, 2008 (Clerk's Doc. No. 1); Plaintiff's Brief in Support of Complaint, filed December 08, 2008 (Clerk's Doc. No. 17); Defendant's Brief in Support of the Commissioner's Decision, filed January 15, 2009 (Clerk's Doc. No. 21); and Plaintiff's Reply Memorandum in Support of Complaint, filed January 25, 2009 (Clerk's Doc. No. 26). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

### I. PROCEDURAL HISTORY

Plaintiff Pamela K. Scott ("Scott") began to receive social security disability benefits due to her blindness in January 1974 (Tr. 122). She received benefits from January 1974 through December 1989. *Id.* From December 1989 until March 2004, Scott was ineligible to receive disability benefits

because she was employed at or above the level of substantial gainful activity ("SGA") (Tr. 123). In March 2004, Scott applied again for disability insurance benefits alleging she was unable to work (Tr. 40–43). She was found eligible for disability benefits; however, dissatisfied with her benefits computation, Scott filed a request for reconsideration (Tr. 44). The Social Security Administration ("SSA") affirmed the original computation and Scott requested a hearing before an administrative law judge ("ALJ") (Tr. 44–50; 97–110).

The ALJ conducted a hearing on March 16, 2006 (Tr. 35). On April 27, 2006, the ALJ issued a decision fully favorable to Scott and ordered the SSA to calculate a higher rate of disability benefits (Tr. 35–38).

On May 25, 2006, the Appeals Council notified Scott it was reviewing the decision of the ALJ (Tr. 197). After additional briefing by Scott, the Appeals Council decided to conduct a *de novo* review of her case (Tr. 214–216). On April 4, 2008, the Appeals Council issued its final decision, which reversed the ALJ's decision and concluded that the SSA correctly calculated Scott's disability benefits. (Tr. 15–31). In effect, the Appeals Council awarded Scott a lower benefit amount than that proposed by the ALJ. *Id.* On June 23, 2008, Scott brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner.

## II. FACTUAL BACKGROUND

### A. Scott's Disability Benefit History

The facts in this case are not in dispute. Scott was born on January 18, 1948 and became blind in 1973, as defined in the statute. *See* Tr. 40; Plaintiff's Memorandum in Support of Complaint

("Pl. Brief") at 1, (Clerk's Doc. No. 17).[1] Due to her disability, she became eligible for disability benefits with an original disability onset date of July 15, 1973. Pl. Brief at 1. Between 1981 and 1989, she was employed and worked below the level of SGA. *Id.* at 2. During that period of employment, she received benefits. *Id.* Beginning in December 1989 until March 2004, Scott was employed above the SGA level and, thus, was ineligible to receive cash benefits. *Id.* In March 2004, Scott alleged that she was unable to work again due to her disability and re-applied for disability benefits (Tr. 40–43).

**B.     Decision of the SSA**

The SSA determined Scott's disability benefits using the Average Monthly Wage ("AMW") computation method (Tr. 44).[2] The SSA made that determination solely based on Scott's earnings in 1971 and 1972 (Tr. 46). This yielded an amount of $1,240.10 as the primary insurance amount ("PIA"), effective April 2004. *Id.* Scott had requested a reconsideration of this calculation, asserting that her PIA should be $1,855.50 (Tr. 44). Upon reconsideration, the SSA affirmed its earlier computation of Scott's disability benefits relying on the "disability freeze" provision (Tr. 44–47). The "disability freeze" provision, codified at 20 C.F.R. § 404.1586(b), provides that even if a blind person's benefits are terminated due to her engagement in substantial gainful activity, her disability status continues if her physical condition still meets the statutory definition of blindness. *Id.* Applying the "disability freeze" provision, the SSA concluded that it should only include Scott's

---

[1] The undersigned relies on Scott's brief for the history of her disability benefits, as Defendant does not challenge these facts.

[2] The record does not contain a copy of the SSA's original decision. Therefore, the undersigned relied on the SSA's restatement of its original decision in its Notice of Reconsideration dated October 6, 2004 (Tr. at 46).

earnings from the earning years of 1971 and 1972, prior to the onset of her disability, in making its calculation. *Id.*

C.   **Decision of the ALJ**

Scott appealed the decision of the SSA to an ALJ. On April 27, 2006, the ALJ issued a decision fully favorable to Scott (Tr. 35–38). The ALJ reversed the SSA's benefit computation and concluded that the SSA erred in imposing a "disability freeze" provision in calculating Scott's PIA, which excluded all her earnings from years beginning 1973 until 2004 (Tr. 37). According to the ALJ, the application of a "disability freeze" period in Scott's case was contrary to the intent of Congress. *Id.* The ALJ ordered the SSA to calculate Scott's disability benefits using the method which would result in the highest benefits, and ordered the SSA to include in its calculations Scott's earnings during the years 1990 to 2004, during which she received no benefits. *Id.*

D.   **Decision of the Appeals Council**

On its own motion,[3] the Appeals Council chose to review the decision of the ALJ (Tr. 13). After addressing some preliminary provisions of the applicable regulations, the Appeals Council, relying on 20 C.F.R. § 404.252,[4] decided that Scott was entitled to receive the higher of: (A) her new PIA under any computation method for which she qualified at the time she was re-entitled to disability benefits; or (B) her previous PIA defined as the PIA she received in the last month during her previous benefits entitlement (Tr. 18).

---

[3]20 C.F.R.§ 404.969(a) authorizes the Appeals Council to review a case on its own motion.

[4]Neither party specifies which year of the Code of Federal Regulations on which they rely. The undersigned will rely upon the 2008 version of the applicable regulations, as this action was filed in 2008, and because the 2004 regulations (the year Scott filed her benefits claim) do not appear to have been different. Throughout this Recommendation, where "20 C.F.R." is omitted and only a section number is cited, I am referring to Title 20 of the C.F.R.

4

The Appeals Council calculated Scott's previous PIA, as instructed by § 404.252(b), to be $946.40 (Tr. 19). When computing Scott's new PIA, as instructed by § 404.252(a), the Appeals Council considered both the Average Indexed Monthly Earnings ("AIME") method and the AMW method. *Id.* Through the AIME method, the Appeals Council calculated Scott's PIA to be $971.60 (Tr. 20–24).

The AMW method is only used when a worker becomes disabled before 1979, as was Scott (Tr. 25). Generally, the AMW monthly benefit amount is derived from an individual's average monthly earnings during her months of employment. *Id.* Before the Appeals Council could conduct the specific AMW computation process, it first had to determine the number of years to be included in the calculation. *Id.*

> To find the average monthly earnings, the number of elapsed years is first determined. In this case, this is equal to the number of years after the year of attainment of age 21 and up to the year before the year the claimant became disabled, or blind. The claimant attained age 21 in 1969 and became disabled, or blind for Social Security purposes on July 15, 1973. Therefore, her elapsed years are 1970 through 1972, for a total of three years.
>
> The number of benefit computation years is equal to the number of elapsed years less five (three elapsed years minus five equals negative two). However, a minimum of two computation years is required (20 CFR 404.221(c)(3)). The claimant has two benefit computation years.

*Id.* In effect, the Appeals Council concluded that Scott's benefits were to be determined based on her earnings in 1971 and 1972, despite the fact that she worked, and earned more, after her disability began in 1973. *Id.* Based on this, the Appeals Council calculated Scott's PIA to be $1,240.10, effective April 2004 (Tr. 26). This PIA was larger than that afforded to her by the AIME method and the previous PIA (Tr. 27). Accordingly, the Appeals Council set Scott's PIA at $1,240.10 effective

April 2004. *Id.* In doing so, the Appeals Council reversed the ALJ's decision and adopted the SSA's earlier computation of Scott's PIA and her disability benefits amount (Tr. 13–31).

### III. ISSUES

Scott alleges that the Commissioner erred in computing her disability benefits and, as a result, she has not received the proper monthly benefit. Pl. Brief at 4-11. Scott proffers an alternative computation, which would set her PIA at $1,855.50 effective April 2004, rather than $1,240.10, which the Commissioner determined she should receive. To support this calculation, she argues: (1) that the Commissioner erred in its application of the statutes and administrative regulations; (2) that, regardless of the Commissioner's interpretation, a higher benefit amount is supported by the Savings Clause; and (3) that other district courts have adopted her calculation method rather than the method of the Commissioner.

### IV. STANDARD OF REVIEW

The Social Security Insurance ("SSI") program was intended "[t]o assist those who cannot work because of age, blindness, or disability" by "set[ting] a Federal guaranteed minimum income level for aged, blind, and disabled persons." *Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S. Ct. 1074, 1077 (1981). In short, SSI is a welfare program of last resort designed to provide a "subsistence allowance." *Id.* Individuals are authorized to challenge the decisions of the Commissioner by filing suits in federal district court. 42 U.S.C. § 405(g). The district court reviews the record to determine whether the Commissioner's decision is legally correct and supported by substantial evidence. *Austin v. Shalala,* 994 F.2d 1170, 1174 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.

1990). The district court is authorized to affirm, reverse, or modify, and may remand the case. 42 U.S.C. § 405(g).[5]

## V. ANALYSIS

It is undisputed that Scott is disabled. Since July 15, 1973, she has met the statutory definition of blindness due to her impaired vision. 20 C.F.R. § 404.1581. Based on her disability, she received benefits for a period of time. However, Scott's benefits terminated once she began to work at a level above the SGA. *Id.* § 404.1586(a)(3). Despite the termination of her benefits, she continued to meet the definition of blindness under the statute and her period of disability continued. *Id.* § 404.1586(b).

In March 2004, Scott re-applied for benefits, alleging she was again unable to work due to her disability. As a result, the Commissioner was required to determine the amount of her monthly benefits, the first step of which is to determine her primary insurance amount ("PIA"). *Id.* § 404.201. The administrative regulations provide several methods for computing PIAs. *Id.* § 404.204. Scott's PIA must be determined by a special method because she received benefits for a time, those benefits were terminated because she engaged in substantial gainful activity, and she re-applied for benefits. *Id.* § 404.204(c)(4). If the three requirements of § 404.204(c)(4) are met, this regulation requires the application of § 404.250 through § 404.252 to calculate the PIA. *Id.*

Scott argues briefly that this special method should not apply. She argues that because she was considered disabled even during the time that her benefits had stopped, her new benefits period

---

[5]To date, the Social Security Administration has produced three written opinions regarding the calculation of Scott's benefits. The most recent, the Appeals Council's decision, becomes the final decision of the Commissioner that is eligible for review by the Court. 42 U.S.C. § 405(g). This is the decision defended by the Commissioner's counsel in this proceeding. Accordingly, the undersigned refers to the decision of the Appeals Council, for the remainder of this opinion, as the decision of the Commissioner.

7

beginning after her 2004 re-application is not a re-entitlement. Pl. Brief at 9. Scott's argument is unavailing. The plain language of § 404.204(c)(4) contemplates Scott's exact scenario. She was disabled and received benefits, § 404.204(c)(4)(i), her benefits were terminated because she engaged in SGA, § 404.204(c)(4)(ii), and she became re-entitled to benefits when she re-applied, § 404.204(c)(4)(iii). Scott appears to misunderstand the "disability freeze" provision, codified at § 404.1586(b), the sole purpose of which is to clarify that a disability continues even if benefits do not. 20 C.F.R. § 404.1586(b). This provision also contemplates that the benefits may end for a time. "Re-entitlement," as used in § 404.204(c)(4)(iii), simply means "entitled again." Additionally, § 404.250 explicitly states that it is the applicable calculation method for individuals who received disability insurance benefits and lost those benefits because they engaged in SGA, just as Scott did. In any event, this claimed error is of little importance because both Scott and the Commissioner agree on the ultimate *method* of calculation; they merely disagree on the way the calculation is conducted.

Section 404.250 has two related provisions, one for individuals whose period without benefits was twelve months or less, § 404.251, and one for individuals whose period without benefits was more than twelve months, § 404.252. Scott was without benefits from 1990 until she re-applied in 2004; therefore, § 404.252 applies. Under § 404.252, the PIA upon re-application is determined by selecting the higher of (a) the new PIA, or (b) the previous PIA. The new PIA may be determined by any of the computation methods for which the applicant qualifies at the time of re-application. *Id.* § 404.252(a). The previous PIA is the amount the applicant was entitled to in the last month for which she was afforded disability benefits. *Id.* § 404.252(b). In Scott's scenario, the Commissioner calculated her previous PIA as $946.40, and Scott does not dispute this figure. Scott's new PIA is

determined by any of the major computation methods for which she qualified at the time of her re-application. *Id.* § 404.252(a).

The major computation methods are codified at § 404.204(b). The first, the AIME method, only applies to individuals who became disabled after 1978. *Id.* § 404.204(b)(1). Scott does not qualify for this method because her disability onset date was in 1973. The second, the AMW method, only applies to individuals, such as Scott, who became disabled before 1979. *Id.* § 404.204(b)(2). The Court, Scott, and the Commissioner all agree that Scott's PIA should be calculated by the AMW method.

The AMW method is described in § 404.220 through § 404.222. *Id.* § 404.204(b)(2). There are three steps to determine the PIA under the AMW method, the first of which is to find the average monthly wage by applying § 404.221. *Id.* § 404.220(b)(1). In general, the average monthly wage is determined by averaging one's social security earnings over the length of time worked. *Id.* § 404.221(a). To figure the average monthly wage, first, the earnings from the benefit computation years are totaled. *Id.* § 404.221(d)(1). Second, this number is divided by the total number of months in the benefit computation years. *Id.* § 404.221(d)(2). Finally, this number is rounded to the next lower whole dollar. *Id.* § 404.221(d)(3).

To reach the number of benefit computation years, the number of elapsed years must first be determined. *Id.* § 404.221(c)(3).[6] Ordinarily, elapsed years are the years beginning with the year a person reaches age twenty-two and ending with the year the person becomes disabled; the years a

---

[6]Section 404.221 also mentions a subsection which governs the calculation of "computation base years." *Id.* § 404.221(b)(2). However, computation base years are not referred to in the subsection where the calculation is explicated. *Id.* § 404.221(d). The example in this section of the C.F.R. does not use "computation base years;" nor do any of the parties advocate for the use of "computation base years." Accordingly, the undersigned does not rely on § 404.221(b)(2).

9

person is disabled are not counted. *Id.* § 404.221(c)(1). However, the years a person is disabled must be included if it would result in a higher average monthly wage. *Id.* Scott turned twenty-two in the year 1970. Although she had no earnings in 1970, she did earn wages in 1971 and 1972 (Tr. at 21). Scott became disabled in 1973. Despite her disability, she earned wages after 1973. Under the regulations laid out above, the years after 1973 must be considered as elapsed years if doing so would raise Scott's average monthly wage. The Commissioner failed to consider whether including the years after 1973 as elapsed years would raise Scott's average monthly wage. Instead, the Commissioner summarily concludes that only the years 1971 and 1972, years prior to Scott's disability, should be considered elapsed years. By doing so, the Commissioner ignored his own regulation, stating that:

> Any part of a year - or years - in which you were disabled . . . is not counted ***unless doing so would give you a higher average monthly wage.*** In that case, we count all the years during the period of disability, even if you had no earnings in some of those years. These are your elapsed years.

§ 404.221(c)(1) (emphasis added).

Therefore, the undersigned must evaluate which scenario results in a higher average monthly wage: (1) solely considering the years prior to her disability as elapsed years, or (2) considering all the years during her period of disability as elapsed years, even if she had no earnings in some of those years. Once the elapsed years are determined, five years are subtracted from the number of elapsed years. 20 C.F.R. § 404.221(c)(3). The years that are excluded are those with the lowest earnings. *Id.* After the five years are removed from the number of elapsed years, the years that remain are called the "benefit computation years." *Id.* A person cannot have fewer than two benefit computation years. *Id.*

After the benefit computation years are determined, the "creditable earnings" in those years are totaled. *Id.* § 404.221(d)(1). The totaled figure is divided by the number of months in the benefit computation years. *Id.* § 404.221(d)(2). Finally, the figure is rounded to the next lower whole dollar. *Id.* § 404.221(d)(3). This is the average monthly wage. *Id.* § 404.221(d). After completing this calculation for the two scenarios above, Scott's average monthly wage is the higher of the two results. *Id.* § 404.221(c)(1).

### 1. Average monthly wage calculated with elapsed years prior to disability

The beginning year is the year that Scott turned twenty-two, 1970. The concluding year is the year she became disabled, 1973. The year she became disabled is not counted in this scenario. Therefore, in this circumstance there are three elapsed years: 1970, 1971, and 1972. After the elapsed years are determined, the five years with the lowest wages are subtracted to reach the benefit computation years. Here, subtracting five years from the three elapsed years would result in a negative number. A minimum of two years is required, so the two years with the highest wages are selected. Scott earned the highest wages in the years 1971 and 1972, and so these are her benefit computation years.

Scott's creditable earnings in the benefit computation years total $14,436.48.[7] This number is divided by the number of months (24) in the two benefit computation years, resulting in a figure of $601.52, which is then rounded down to the next lowest whole dollar, or $601.00. Therefore, including only the years prior to Scott's disability results in an average monthly wage of $601.00.[8]

---

[7]This figure comes from the earnings record table included in the Appeals Council's opinion (Tr. 21–22).

[8]This is the same figure the Commissioner reached (Tr. 25).

11

### 2. Average monthly wage calculated with elapsed years during period of disability

Again, the beginning year is the year that Scott turned twenty-two, 1970. The concluding year is the year she re-applied for benefits, 2004. This final year is not included, however, because it is the year she became re-entitled for benefits. Therefore, Scott's elapsed years are 1970 to 2003, a total of thirty-four years. After the elapsed years are determined, the five years with the lowest wages are subtracted to reach the benefit computation years. Of the thirty-four years that constitute Scott's elapsed years, she earned nothing in eight of those years (1970, 1974–1980). Five of the years in which she earned nothing are subtracted, resulting in twenty-nine benefit computation years. In some of these benefit computation years she had no creditable earnings; however, these are still included in the calculation. Scott's creditable earnings from her benefit computation years total $467,133.85. This number is divided by the 348 months in the twenty-nine benefit computation years, resulting in a figure of $1,342.34. Rounded down the figure becomes $1,342.00.[9]

As is plain from these calculations, including Scott's years of disability results in a higher average monthly wage than that calculated by the Commissioner. Consequently, a higher average monthly wage would result in a higher PIA for Scott. By failing to include the additional years, the Commissioner made a legal error which directly resulted in a lower benefit amount for Scott. Therefore, the Commissioner's benefits determination must be reversed and remanded for recalculation consistent with this opinion. 42 U.S.C. § 405(g), sentence four; *see also Capps v. Sec'y of HHS*, No. 6:94-1690202AK, 1995 WL 568489 (D.S.C. Sept. 5, 1995) (Commissioner made reversible error by excluding employment in years of disability in AMW calculation when inclusion of those years would result in a higher benefit).

---

[9]This number is one dollar less than that calculated by Scott. Pl. Brief at 12.

A district court remanding a case pursuant to sentence four of § 405(g) must enter judgment in the case, and may not retain jurisdiction over the administrative proceedings on remand. *Shalala v. Schaefer*, 509 U.S. 292, 297 (1993); *see also Istre v. Apfel*, 208 F.3d 517, 520-521 (5th Cir. 2000) (a sentence four remand must include a substantive ruling affirming, modifying or reversing the Secretary's decision). Rather than modify the Commissioner's decision directly, the undersigned recommends returning the case to the Commissioner for the Commissioner to recalculate Scott's monthly benefits consistent with this opinion, effective as of her re-application in 2004. *McQueen v. Apfel*, 168 F.3d 152, 156 (5th Cir. 1999) (reversed decision and remanded to Commissioner, directing Commissioner to calculate plaintiff's benefits pursuant to the Fifth Circuit's opinion).[10]

## VI. RECOMMENDATION

The undersigned concludes that the Commissioner made a legal error in applying the applicable administrative regulations. Therefore, the undersigned **RECOMMENDS** that the District Court **REVERSE** the decision of the Commissioner and **REMAND** for proceedings consistent with this opinion. The undersigned **FURTHER RECOMMENDS** that the District Court **ENTER JUDGMENT** in this case on behalf of the Plaintiff.

## VII. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

---

[10]Given this conclusion, the Court need not consider Scott's alternative argument advocating for a benefits calculation under the Savings Clause.

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of June, 2009.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE